# In the United States Court of Federal Claims

No. 24-1897
Filed: May 23, 2025†
Published: June 3, 2025

**PROFESSIONAL ANALYSIS, INC.,**

    *Plaintiff*,

v.

**THE UNITED STATES,**

    *Defendant*,

and

**CACI, INC.—FEDERAL**

    *Defendant-Intervenor*.

*Thomas K. David*, Reston Law Group LLP, Reston, VA, for the Plaintiff.

*Matthew J. Carhart*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, *Douglas K. Mickle*, Assistant Director, *Patricia McCarthy*, Director, and *Brett A. Shumate*, Acting Assistant Attorney General, U.S. Department of Justice, Washington, D.C. with *T. Alexander Cloud, Jr.*, Assistant Counsel, Military Sealift Command, Norfolk N00L, for the United States.

*Robert K. Tompkins*, Holland & Knight LLP, Washington, D.C., with *Kelsey M. Hayes,* and *Richard J. Ariel*, for the Defendant-Intervenor.

### MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

    Good manners are not required in government contracting. Plaintiff, Professional Analysis, Inc. ("PAI"), asks this Court to adopt its construction of key terms of the Solicitation in

---

† This Opinion was originally issued under seal on May 23, 2025, (ECF No. 41). The Court provided parties the opportunity to submit proposed redactions. In a Joint Status Report filed May 30, 2025, (ECF No. 43), the parties indicated that no redactions were required.

this bid protest, an invitation that this Court does not accept. All parties have moved for judgment on the administrative record based on their opposing interpretations of the words "shall," "reservation," "assumption," and "qualification." For the reasons stated below, the United States' Cross-Motion for Judgment on the Administrative Record, (ECF No. 33), and Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record, (ECF No. 34), are **GRANTED**. PAI's Motion for Judgment on the Administrative Record, (ECF No. 32), is **DENIED**.

## I. Background

This protest challenges a U.S. Department of the Navy, Military Sealift Command ("MSC") award (Solicitation No. N3220523R4140 ("RFP" or "Solicitation")) of a "Worldwide Logistics (WWL) Services" contract to Defendant-Intervenor, CACI–Federal, Inc. ("CACI"). (Compl. ¶¶ 1–2, ECF No. 1). The Solicitation was originally issued in 2023, seeking logistics support, material handling support, and supply chain management. (Administrative Record ("AR") 8110–13, ECF No. 27). The RFP anticipated a fixed-price contract with a period of performance of a two-month phase-in period, a ten-month base period, and four twelve-month option periods. (AR 1708–1709).

The Solicitation stated that "[t]he evaluation process will use a Lowest Price Technically Acceptable (LPTA) evaluation approach in order to determine which offeror represents the best value to the Government." (AR 1780–81). Proposals would be evaluated according to: Technical Approach (Factor 1), Past Performance (Factor 2), Price (Factor 3), and Small Business Participation Commitment Document (Factor 4). (AR 1780–83). Factor 1, Technical Approach, included three subfactors: (1) organizational experience; (2) understanding of sample problems 1, 2, 3, and 5; and (3) management approach and personnel experience. (AR 1781). As part of the Agency's evaluation efforts, MSC would review each offeror's small business subcontracting plan, and evaluate "the realism of the proposal." (AR 1783). MSC amended the Solicitation six times. (*See* AR 1684). Solicitation Amendment 0006, (AR 1684–1817), issued in June 2024, is the final version of the Solicitation at issue. (Def.-Interv.'s Cross-MJAR at 2 n.1).

In addition to its many directions, the Solicitation contained an addendum to FAR 52.212-1, entitled "Additional Instructions to Offerors—Commercial Items" which provided general proposal instructions. (AR 1773). Specifically, the provision requested offerors to: "[p]lease provide certification that price was without reservation, assumption, or qualification and that the Total Evaluated Price contains pricing for all work in the [Performance Work Statement]." (AR 1778). In their proposal cover letter, offerors were directed to provide an "Agreement with Terms," which would include:

> A statement specifying the extent of agreement with all terms, conditions, and provisions included in the solicitation and agreement to furnish any or all services upon which prices are offered. Offerors are to clearly detail any exceptions taken and the rationale for the exceptions taken to the solicitation. Exceptions taken to the solicitation may render the proposal unacceptable to the Government.

(AR 1778–1779).

MSC first awarded the contract to PAI. (Compl. ¶ 12; AR 5318, 6596). CACI filed a protest with the Government Accountability Office ("GAO"), (GAO File No. B-422226.2), and MSC subsequently took corrective action and accepted revised proposals from both PAI and CACI, (Compl. ¶ 14; AR 7151–54).

MSC amended some of the instructions in the Solicitation as part of its corrective action. (*See* AR 1703 ("In taking corrective action, the Government revised the proposal instructions and evaluation criteria in an effort to clarify ambiguity.")). Most relevantly, MSC inserted a new introduction to the FAR 52.212-1 addendum, in addition to the guidance excerpted above:

> Introduction: This FAR 52.212-1 addendum primarily sets forth proposal instructions, not evaluation criteria. The evaluation criteria for proposals submitted under this solicitation are set forth below in the FAR 52.212-2 provision. Moreover, although certain proposal instructions in this addendum establish minimum requirements pertaining to the length, format, and content of an Offeror's proposal submission, and a proposal will be evaluated as Unacceptable if it fails to meet one of those minimum requirements, the majority of the proposal instructions in this addendum do not establish minimum requirements and are not evaluation criteria. In this FAR 52.212-1 addendum, the use of "shall" in a sentence denotes that the sentence establishes a minimum solicitation requirement. If "shall" is not used (e.g., "should" is used), then no minimum requirement is established.

(AR 8041 (red color in original)). Accordingly, MSC added "shall" to multiple provisions in the Amended Solicitation, (*compare* AR 6561 *with* AR 8046), but did not alter the text of the provision asking offerors to "[p]lease provide certification that the price was without reservation, assumption, or qualification and that the Total Evaluated Price contains pricing for all work in the PWS[,]" (*Compare* AR 6562 *with* AR 8046). Ultimately, the Source Selection Authority ("SSA") determined CACI's final proposal provided the best value to MSC and awarded CACI the contract. (AR 12722–25).

PAI protested at the GAO. (Compl. ¶ 6; GAO File No. B-422226.4). There, PAI presented two main arguments: first, that MSC improperly failed to conduct a price realism analysis, and second, that CACI's proposal was technically unacceptable because it took exception to material provisions of the Solicitation. (AR 12911–19). The latter argument is also the focus of PAI's Complaint here. (*See generally* Compl.). Given the strikingly similar arguments raised by PAI *and* MSC both at the GAO and in this forum, a review of the GAO proceedings is warranted.

At the GAO, MSC argued that the Solicitation did not contain "the imperative 'shall' in connection with the instruction to certify that the price was without 'reservation, assumption, or qualification' instead it 'permissively requests offerors to provide the referenced certification.'" (AR 12884–85 (citing AR 1773)). MSC also argued that CACI's proposal expressly stated that CACI took no exception to any terms, conditions, or provisions in the Solicitation and instead merely reserved a *right to request* an equitable adjustment under certain circumstances. (AR 12884–85 (citing AR 8301, 8303)). The GAO denied PAI's protest on the merits, (*see generally*

AR 12911–19), and found that MSC reasonably determined that CACI's proposal assumptions were not exceptions to the Solicitation that reflected "the reservation of a right to request, rather than receive, a price adjustment." (AR 12911, 12916–19). The GAO summarized its conclusions as follows:

> In sum, we conclude that CACI's proposal did not take exception to material terms of the solicitation, nor did the agency improperly relax material solicitation requirements and treat the offerors disparately. To the contrary, the record shows that CACI expressly stated that it took "no exception to any terms, conditions, or provisions included in the solicitation and [agreed] to furnish any or all services upon which prices are offered." Thus, we find the agency's evaluation and the contracting officer's conclusion that the assumptions included in CACI's proposal did not take exception to material requirements in the RFP to be reasonable. Accordingly, we deny this allegation.

(AR 12919 (internal citations omitted)). PAI then filed this action. (*See* Compl.).

## II.    Analysis

### A.  Standard of Review

According to 28 U.S.C. § 1491(b)(4), the Court reviews agency procurement decisions under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Under the APA standard, "[i]n a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial." *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). Thus, judicial review of agency action under the APA proceeds on two tracks: the Court could find (1) the agency's decision lacked either a rational basis or support from the administrative record or was arbitrary and capricious; and/or (2) the agency's procurement procedure involved a violation of regulation or statute. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).

After showing that the procuring agency violated the law or acted arbitrarily and capriciously, the protestor must also show that the agency's violation was prejudicial to the protestor. *Glenn Def. Marine*, 720 F.3d at 907. Accordingly, the Court's review is "highly deferential" to the agency's decision. *Id.* (citation omitted). "The court must show especially great deference to the agency's technical evaluations, past performance ratings, and other 'minutiae of the procurement process . . . which involve discretionary determinations of procurement officials.'" *Vanguard Recovery Assistance v. United States*, 101 Fed. Cl. 765, 780 (2011) (citation omitted). The Federal Circuit has acknowledged that contracting officers possess discretion across a wide array of issues they encounter during the procurement process, especially when a challenge is based on the argument that the agency's decision lacked a rational basis, was unsupported by the administrative record, or was arbitrary and capricious. *Impresa Construzioni*, 238 F.3d at 1332. "Under the 'arbitrary and capricious' standard[,] the scope of review is a narrow one. A reviewing court must consider whether the decision was based on a

4

consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (internal quotations omitted). The Court may not substitute its own judgment for that of the agency. *Id*. But the agency must articulate a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). Thus, a procurement decision is unobjectionable if the agency "provided a coherent and reasonable explanation of discretion[.]" *Impresa Construzioni*, 238 F.3d 1325 at 1332–33.

Unlike the standard applied in summary judgment motions, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011); *see also* RCFC 56. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). Taken together, the standards for success by a plaintiff are substantial.

B. Discussion

The issues PAI brings to this Court are markedly similar, if not identical, to those decided at the GAO. Here, PAI's MJAR asserts two main arguments: (1) that CACI's proposal "failed to meet at least two stated requirements[,]" which should have rendered its proposal unacceptable to MSC; and (2) the assumptions in CACI's proposal, in which it reserved the right to seek a price adjustment, are "unacceptable."[1] (*See* Pl.'s MJAR at 11–13). Stated differently, PAI claims the RFP contained three "tacitly related" but "independent" "requirements" to be compliant with the RFP: "an offeror had to state that they were committed to provide the enumerated services at the price set forth in their proposal with no exceptions, submit a certificate that their offer was void of any assumptions, reservations or conditions and lastly their actual proposal needed to be void of any assumptions, reservations or conditions." (*Id.* at 5). PAI asserts that CACI included thirty-seven (37) improper assumptions and reservations to the terms of the Solicitation that were "rubber stamped" by MSC during the selection process. (*Id.* at 6).

PAI also contends that CACI failed to provide the "required" certification that its proposal was without assumptions or conditions. (*See id.* at 4). PAI's arguments hinge on this Court accepting its interpretation of the relevant Solicitation provisions—specifically, whether the word "shall" is necessary to establish a minimum requirement. PAI argues that the Solicitation's phrase "please provide" was imperative even without the use of the term "shall." (Compl. ¶ 49; *see* Def.-Interv.'s Cross-MJAR at 10). However, PAI does little to substantiate this component of its argument, referencing it briefly in two footnotes, but providing little in the way

---

[1] In its Reply, PAI rather mysteriously states that "information in or absent from the Administrative Record ('AR') conspicuously confirms that the Agency disregarded certain requirements set forth in the RFP and its effort to reconcile those discrepanc[ies] as part of this protest is lacking in factual or legal support." (Pl.'s Reply at 2, ECF No. 35). If PAI was aware of any information absent from the Administrative Record, it should have notified Defendant and this Court. To the extent that it may be referring to matters within the AR, it is PAI's responsibility to explicitly direct the Court to its precise location.

of meaningful analysis.[2] In turn, MSC and CACI persuasively argue that the word "shall" is indispensable to create a minimum requirement. (*See* Def.'s Cross-MJAR at 1–2, 11–13; Def.-Interv.'s Cross-MJAR at 5, 10–11).

To determine whether the provisions at issue were mandatory, the Court must examine the minutiae of not only the Solicitation, but also the English language. The United States conveniently lays out the three key phrases and labels them "provision 1," "provision 2," and "provision 3[.]" (Def.'s Cross-MJAR at 10). Provision 1 states: "In this FAR 52.212-1 addendum, the use of 'shall' in a sentence denotes that the sentence establishes a minimum solicitation requirement. If 'shall' is not used (e.g., 'should' is used), then no minimum requirement is established." (AR 8041). Provision 2 states: "Please provide certification that price was without reservation, assumption, or qualification and that the Total Evaluated Price contains pricing for all the work in the PWS." (AR 8046). Provision 3 states:

> The following information shall be provided in the proposal cover letter: . . . Agreement with Terms: A statement specifying the extent of agreement with all terms, conditions, and provisions included in the solicitation and agreement to furnish any or all services upon which prices are offered. Offerors are to clearly detail any exceptions taken and the rationale for the exceptions taken to the solicitation. Exceptions taken to the solicitation may render the proposal unacceptable to the Government.

(AR 8047). The Court relies on these provisions to evaluate each of PAI's arguments.

> i. <u>CACI was not required to include a certification that its proposal was without reservations and assumptions.</u>

PAI contends that CACI's proposal failed to meet two requirements, the first being the absence of a certification that the proposal was submitted without reservations or assumptions. (Pl.'s MJAR at 5, 9, 11–12).[3] Specifically, PAI argues that omitting this certification should have rendered CACI's proposal unacceptable because it was a violation of Provision 2. (*Id.* at 4–5). PAI alleges that the words "please provide" at the outset of the provision created a mandatory condition that CACI failed to meet. (*See id.* at 4 n.1; Pl.'s Reply at 3 n.1, ECF No. 35). PAI contends that many other stated requirements in the Solicitation *were* necessary but were not preceded by the word "shall," and the same was true for this provision. (*See* Pl.'s MJAR at 4 n.1 ("[w]hat the Defendants also fail to share is that the RFP includes many requirements, like the need to provide a rationale for any exceptions, that are not triggered by the word "shall".)).

---

[2] In its Cross-MJAR, the United States urges the Court to disregard PAI's argument that "please provide" establishes a minimum requirement in the absence of the word "shall[.]" (Def.'s Cross-MJAR at 14 ("Because PAI has relegated this argument to an undeveloped footnote, the Court should deem it forfeited.") (internal citation omitted)). The Court declines to do so.

[3] This certification is different than the Agreement with Terms, (*see* AR 1779), discussed in more detail below.

There is no dispute that CACI did not include this certification in its proposal. However, the United States argues that the words "please provide" do *not* establish a minimum requirement, and CACI's proposal is therefore acceptable regardless of whether it contained the referenced certification. (Def.'s Cross-MJAR at 10). To support its claim, the United States makes three arguments. (*Id.* at 11–12). First, the United States argues in no uncertain terms that Provision 1 establishes that to be a minimum requirement, the provision must contain the word "shall." (Def.'s Cross-MJAR at 11 ("In light of the instruction in Provision 1 (AR 8041), the 'please provide certification language' in provision 2 (AR 8046)—which does not use the word 'shall'—does not establish a minimum requirement.")). Second, the United States notes that the Solicitation at issue underwent corrective action, during which the word "shall" was added to multiple provisions to clarify that those provisions were required. (Def.'s Cross-MJAR at 12; *compare* AR 8046 *with* AR 6561). In contrast, the word "shall" was *not* added to Provision 2 during that time. (Def.'s Cross-MJAR at 12). Third, the United States points to Provision 3 for additional support, which states in part that "[e]xceptions taken to the solicitation *may* render the proposal unacceptable to the Government." (*Id.* (citing AR 8047 (emphasis added)).

The Court finds the United States' arguments persuasive. The text of Provision 1 plainly states that to establish a minimum requirement, the provision must include the imperative "shall." The provision asking offerors to "please provide" certifications that their proposals do not contain any reservations, assumptions, or qualifications plainly does not contain the word "shall." Furthermore, MSC had the opportunity to add the word "shall" to this provision during its corrective action and chose not to. This is an even further indication that the provision was indeed not mandatory. In its Reply, PAI states that "[i]t should also be noted, that in not less than eighty-one (81) reported decisions from this Court the words 'please provide' were noted as directives, mandates, and terms that prefaced requirements imposed on offerors." (Pl.'s Reply at 4). However, PAI does not cite to any of these decisions.[4]

Despite what PAI would like this Court to find, the meaning here is plain. MSC was well within its discretion to find CACI's proposal acceptable even though it did not contain a certification that its proposal was without reservations, assumptions, or qualifications. In fact,

---

[4] In a footnote, PAI claims that "the [Court of Federal Claims has addressed scores of procurements where the words '[p]lease provide' established a requirement." (Pl.'s MJAR at 4 n.1 (citing *Land Shark Shredding, LLC v. United States*, 156 Fed. Cl. 84 (2021)). PAI's reliance on *Land Shark* is misplaced. There, the Solicitation asked offerors to "please provide the names of all subcontractors" which Land Shark did not do. (*Land Shark*, 156 Fed. Cl. at 87). The Contracting Officer determined that Land Shark's proposal was unacceptable, in part because it had "inconsistent information regarding whether it would use subcontractors" and "if it intended to use subcontractors, it did not provide the name of those subcontractors." (*Id.* (citations omitted)). The Court did not directly assess whether "please provide" in this instance was a requirement. That Land Shark did not provide the names of its subcontractors was not why its proposal failed, it was fact that the CO could not discern whether Land Shark intended to use subcontractors *at all*. (*See id.*). The words "please provide" were not a requirement in *Land Shark*, nor are they here.

7

using PAI's argument, it would be logically impossible for CACI to include this certification while also containing reservations and assumptions in its proposal.

        ii.    <u>The Contracting Officer reviewed CACI's assumptions and reasonably found that none took exception to material terms of the solicitation.</u>

According to PAI, CACI's proposal failed to meet a second requirement stated in the Solicitation because it contained thirty-seven (37) assumptions, reservations, and conditions. (Pl.'s MJAR at 6). The Solicitation stated that an "Agreement with Terms" "shall be submitted" as part of the proposal. (AR 1778–79, 8046). The Agreement with Terms is defined in the Solicitation as:

> A statement specifying the extent of agreement with all terms, conditions, and provisions included in the solicitation and agreement to furnish any or all services upon which prices are offered. Offerors are to clearly detail any exceptions taken and the rationale for the exceptions taken to the solicitation. Exceptions taken to the solicitation may render the proposal unacceptable to the Government.

(AR 1779). CACI provided the following statement in their proposal: "CACI acknowledges receipt of Solicitation N3220523R4140 through Amendment 0006 and takes no exception to any terms, conditions, or provisions included in the solicitation and agrees to furnish any or all services upon which prices are offered." (AR 8301).

Exceptions to the Solicitation are clearly permitted under the above provisions, so long as they are accompanied by a rationale. (AR 1779). CACI's proposal contained reservations and assumptions, though MSC found that none qualified as an "exception" to the Solicitation's terms. (AR 12706–11; *see* AR 12712 ("The Contracting Officer has thoroughly reviewed each of CACI's pricing assumptions individually and has determined that none constitute exceptions to any material terms of the solicitation or contract.")). PAI argues that this evaluation lacks "true analysis" and that this "simply act[ed] as a rubber stamp exercise." (Pl.'s Reply at 8).

What PAI asks is beyond the power of this Court. *See Bowman Transp.*, 419 U.S. at 285. MSC conducted an evaluation of the assumptions and reservations contained in CACI's proposal, and explicitly found that none rose to the level of an exception to the material terms of the Solicitation. (AR 12706–11). PAI complains that the Agency's review is "undated, untitled, filled with unnumbered paragraphs, and is not attributed to any specific government official." (Pl.'s Reply at 9). The Court is not in the business of monitoring the format and style of the United States' procurement documents. PAI's dissatisfaction with the agency's explanation, on its own, does not amount to evidence of misconduct. MSC itself confirmed that CACI's proposal was "in compliance with the minimum requirements listed in the solicitation" in the Procurement Contracting Officer's Compliance Worksheet ("PCO Worksheet"). (AR 12712–13). The Court can muster no evidence that the actions of the Contracting Officer were arbitrary, capricious, or an abuse of discretion. *See Glenn Def. Marine*, 720 F.3d at 907. MSC's decision that the assumptions and clarifications were not exceptions is well supported by the Administrative

Record, (AR 12712), and the Court will not endeavor to substitute its judgment for that of the agency. *See Bowman Transp.*, 419 U.S. at 285.

PAI asserts that it "submitted a proposal to MSC that contained a fair and reasonable price with the belief that PAI would absorb any risk if it failed to properly 'identify any misalignments.' PAI never believed it could impose 'conditions' or 'reservations' on the Agency . . . ." (Pl.'s MJAR at 8–9).[5] A bid protest cannot remedy PAI's mistaken assumptions. While unfortunate, there is generally always a losing party in the game of government contracts. Here, PAI has not demonstrated that CACI's proposal failed to satisfy the Solicitation's second requirement.

> iii. CACI reserved the right to *request* an adjustment in pricing, not the right to *receive* an adjustment in pricing.

Alternatively, PAI also argues that assumptions in an offeror's proposal that reserve a right to seek a price adjustment are unacceptable. (Pl.'s MJAR at 12). PAI previously raised this argument at the GAO, where the United States prevailed. (AR 12918). PAI cites *Harmonia Holdings Grp., LLC v. United States*, where a disappointed offeror protested a contract award on the basis that the awardee submitted a proposal containing disqualifying assumptions. (Pl.'s MJAR at 12–13 (citing 136 Fed. Cl. 298, 312 (2018)). The *Harmonia* Court denied the disappointed offeror's protest because the assumptions in the winning proposal did not directly or indirectly reserve the right for the awardee to try to increase its price after award. *Harmonia Holdings*, 136 Fed. Cl. at 312. PAI argues that CACI's price assumptions *do* try and increase their price post-award, rendering its proposal unacceptable. (Pl.'s MJAR at 12–13). PAI generally argues that "[i]n the instant matter, it is undisputed that CACI's proposal mirrors the conditions that the [C]ourt found disqualifying in the *Harmonia* decision as its 2023 and 2024 proposal regularly contain assumptions in which CACI's [sic] reserves the right to obtain an increase in its prices."[6] (Pl.'s MJAR at 13).

CACI's proposal contains assumptions about pricing that were dispensed with by the Contracting Officer. (AR 12706–11). PAI claims that "CACI boldly and remarkably" included an assumption that "[CACI] will engage in discussions with MSC Directors post-award to review the PWS requirements and expectations in detail to identify any misalignment and uncover any gaps between expectations and priced level of effort." (Pl.'s MJAR at 8).

The United States and Defendant-Intervenor argue that CACI merely reserved the right to request an adjustment in pricing, which is different than the right to *receive* an adjustment. (*See* AR 8303; AR 12918). According to Defendant-Intervenor, the reservation of the right to request a pricing adjustment can be declined by the agency, and therefore does not make performance conditional and does not constitute an exception. (Def.-Interv.'s Cross-MJAR at 16–17; *see, e.g., Dev. Tech. Grp.*, B-412163, Jan. 4, 2016, 2016 CPD ¶ 10 at 3–6 (statement that "[i]t is assumed

---

[5] The internal quotations in this sentence were unattributed in PAI's MJAR.

[6] CACI's 2023 proposal is not at issue in PAI's bid protest and is not reviewed here.

that as the Technical Landscape changes over time and the team requires new or additional skills, the pricing of the team can be renegotiated[,]" did not constitute an exception because it did not condition offeror's price on the right to receive additional payment); *Advanced Techs.*, B-411658, 2015 CPD ¶ 301 at 9–10 (revised proposal statement that "[a]ny requested price adjustment regarding wages will be in compliance with and as allowed by [FAR 52.222-43]" not an exception because it no longer conditioned the offeror's performance on payment of an adjustment).

Defendants dispute PAI's interpretation of *Harmonia* and echo the findings of the GAO. (*See* Def.'s Cross-MJAR at 15; Def.-Interv.'s Cross-MJAR at 16; AR 12918). In *Harmonia*, none of the awardee's assumptions reserved the right to alter the pricing. *Id.* It seems to this Court that the *Harmonia* Court concerns the ability of the awardee to alter its pricing post-award, rather than the ability for the protester to reserve a right to request an adjustment. *Id.* A *request* to reserve the right to seek a price adjustment and an unequivocal reservation of the right to seek a price adjustment are plainly *not* the same. The Court cannot make the leap that CACI's assumptions reserve the right to obtain an increase in its prices.

Aligning with this rationale, the GAO found that the Contracting Officer's evaluation of CACI's pricing assumptions were reasonable, and "the right to request equitable adjustment did not indicate that CACI's proposed price was not firm." (AR 12918). The Court sees no reason to differ. As stated above, the Contracting Officer's analysis of CACI's assumptions, some of which were related to pricing, were reasonable. (*See also* AR 12706–11). PAI has not shown that MSC's decision was in violation of law or arbitrary and capricious. *See Weeks Marine,* 575 F.3d at 1358; *Impresa Construzioni*, 238 F.3d at 1332. On the contrary, MSC's decision-making process is rational and well-supported by the administrative record. Nowhere in CACI's proposal has it demanded the right to receive an adjustment in pricing, and a mere request (deniable by MSC) is not grounds to find in PAI's favor. *See, e.g., Dev. Tech. Grp.*, B-412163, Jan. 4, 2016, 2016 CPD ¶ 10 at 3–6.

    iv.    <u>PAI has not demonstrated prejudice</u>.

For a protester to succeed in a bid protest, it must not only show that the procuring agency violated the law or acted arbitrarily and capriciously, but *also* show that the agency's violation is prejudicial. *See Glenn Def. Marine*, 720 F.3d at 907. PAI has done neither. PAI made no argument about prejudice in its MJAR.[7] PAI references prejudice in its Complaint, (Compl. at ¶¶ 11, 30, 45), and uses the word once in its Reply, (Pl.'s Reply at 2). To the extent that PAI raised additional arguments in its Complaint and not in its MJAR, those arguments are waived. *See Rivera-Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir. 1988) (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990 (1st Cir. 1988) ("Judges are not expected to be mindreaders[;] . . . a [party] has an obligation 'to spell out its arguments squarely and

---

[7] The Table of Contents of PAI's Motion for Judgment on the Administrative Record contains a heading titled "The Plaintiff was prejudiced by the evaluation and source selection processes employed by the Agency[,]" but the corresponding page does not contain any references to this argument. (Pl.'s MJAR at 2, 13).

distinctly' or else forever hold its peace."). Given the lack of substantive argument, the Court cannot possibly find that PAI was prejudiced by MSC's decision. *See Seventh Dimension, LLC v. United States*, 161 Fed. Cl. 110, 129 (2022) (citing *SmartGene, Inc. v. Advanced Biological Lab'ys, SA,* 555 F. App'x 950, 954 (Fed. Cir. 2014) ("Arguments that are not appropriately developed in a party's briefing may be deemed waived.") *United States v. Zannino*, 895 F.3d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.")).

### III. Conclusion

Not only does PAI's interpretation of the words "shall" and "please provide" misalign with the plain text of the Solicitation and its component parts, but finding for PAI would necessarily require this Court to improperly substitute its judgment for that of the Agency's. PAI has failed to prove the elements essential for a successful bid protest. The Court therefore **GRANTS** the United States' Cross-Motion for Judgment on the Administrative Record, (ECF No. 33), and Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record, (ECF No. 34). PAI's Motion for Judgment on the Administrative Record, (ECF No. 32), is **DENIED**. The Clerk is directed to enter judgment accordingly.

The Court **ORDERS** the parties to meet and confer and file a Joint Status Report proposing redactions to this Order and Opinion **fourteen (14) days** after the entry of this Order.

**IT IS SO ORDERED.**

s/     David A. Tapp     
DAVID A. TAPP, Judge